UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES A. MARTORELLO,

Plaintiff,

v.

SUN LIFE ASSURANCE COMPANY OF CANADA, et al.,

Defendants.
_______________________________________/

No. C 09-0912 PJH

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS STATE LAW CLAIMS AND STRIKE JURY DEMAND; AND GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**

Before the court is defendant Sun Life Assurance Company of Canada's ("Sun Life") motion to dismiss state law claims and strike jury demand, which plaintiff Charles Martorello ("plaintiff") opposes. Also before the court is plaintiff's motion to dismiss Sun Life's counterclaim, which Sun Life opposes. Because the court finds these matters suitable for decision without oral argument, the hearing date of May 6, 2009 is VACATED pursuant to Civil Local Rule 7-1(b). Having carefully read the parties' papers and considered the relevant legal authority, the court hereby GRANTS Sun Life's motion to dismiss state law claims and strike jury demand and GRANTS plaintiff's motion to dismiss Sun Life's counterclaim, for the reasons stated below.

**BACKGROUND**

Plaintiff was formerly employed by Hilti, Inc. ("Hilti") and enrolled in the Hilti Long Term Disability Plan ("Plan"), which consisted of a group disability insurance contract issued by Sun Life, Group Policy No. 28683 (the "Group Policy"). Compl. ¶¶ 3, 5. Plaintiff was insured under the Plan and the Group Policy. Id. ¶ 6. The Plan was an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") that provided benefits to participating Hilti employees,

including plaintiff. Id. ¶¶ 3, 5. Sun Life was the *de facto* plan administrator of the Plan and the claims fiduciary of the Plan. Id. ¶ 3.

Under the Plan and Group Policy, Sun Life promised to pay monthly benefits in the event that plaintiff became unable to perform the material and substantial duties of his occupation due to injury or sickness. Compl. ¶ 6. The Plan and Group Policy further provide for payment of partial disability benefits in the event plaintiff worked in a reduced capacity but suffered at least a 20% loss in income. Id.

On or about December 22, 2005, plaintiff suffered a Type A aortic dissection requiring multiple surgeries, and thus became totally disabled from his occupation as Hilti, Inc.'s Senior Vice President of Sales for the Western Region and entitled to benefits. Compl. ¶ 7. Shortly after becoming disabled, plaintiff applied for disability benefits under the Plan and Group Policy, and Sun Life commenced paying benefits. Id. ¶ 8. At the time of disability, plaintiff's salary with Hilti was $172,636, excluding substantial bonuses plaintiff received, such that his "total monthly earnings" were $14,386.34. Id.

In 2006, plaintiff returned to work for Hilti in a new position, director of management recruiting, a position that Hilti specifically created to allow plaintiff to return to work. Compl. ¶ 9. Plaintiff's new position resulted in a substantial decrease in earnings. Id. His salary was initially reduced to $136,000 and then further reduced to $100,000, and his bonus level was cut in half. Id.

Prior to working out this arrangement with Hilti, plaintiff had many discussions with Sun Life concerning how a possible return to work for Hilti would impact his receipt of disability benefits. Compl. ¶ 10. Sun Life repeatedly told plaintiff that his benefits would be paid based on his reduction in salary without regard to bonus payments. Id. Following his return to work, Sun Life paid plaintiff disability benefits in accordance with these representations. Id.

By letter dated August 31, 2007, Sun Life terminated disability benefits to plaintiff, claiming that plaintiff was able to perform his prior occupation. Compl. ¶ 11. Plaintiff appealed this decision on or about February 22, 2008. Id. By letter dated May 23, 2008,

Sun Life overturned its decision to terminate benefits, stating that it "determined that the medical evidence on file supports Mr. Martorello's inability to perform his own occupation as it is defined by his Policy." Id. The letter further advised that Sun Life would calculate back benefits owed retroactive to September 1, 2007. Id.

On or about June 18, 2008, Sun Life wrote to plaintiff advising him that it would not pay any benefits retroactive to September 1, 2007, and would not reinstate his claim, claiming that plaintiff's bonus payments were such that he had not suffered the requisite 20% loss in income to qualify for partial disability benefits. Compl. ¶ 12. In this letter, Sun Life stated that it would now interpret "disability earnings" to include bonus payments and would continue to interpret pre-disability "total monthly earnings" to exclude bonus payments. Id. Under these interpretations, Sun Life stated that plaintiff had not suffered the requisite 20% loss in income, and therefore was not entitled to any disability benefits. Id. Plaintiff appealed this decision, but Sun Life refused to overturn its determination and maintained its denial of benefits. Id. According to plaintiff, Sun Life's determination was wrongful under the terms of the Plan and Group Policy, and resulted in the denial of disability benefits to which he is entitled. Id. ¶¶ 12, 14.

Alternatively, plaintiff asserts that Sun Life is liable for breach of contract for failure to honor the terms of the "new" contract to provide disability benefits, resulting in the improper denial of disability benefits. Compl. ¶¶ 38-39. This "new" contract is predicated on Sun Life's promise to pay monthly disability benefits based only on plaintiff's reduced salary without regard to bonus payments upon his return to work in a different capacity. Id. ¶¶ 33-34. According to plaintiff, Sun Life understood that because plaintiff could never again work in his prior occupation, if he chose not to return to work with Hilti in some other capacity, Sun Life would be required to pay total disability benefits for the maximum benefit period or, if plaintiff returned to work in a new occupation, he could be entitled to partial disability benefits so long as his "disability earnings" did not exceed 80% of his pre-disability "total monthly earnings." Id. ¶ 33. Sun Life also understood that if bonus payments were excluded when calculating pre-disability "total monthly earnings," but included when

calculating "disability earnings," it was "virtually guaranteed" that plaintiff's return to work would result in "disability earnings" that exceeded 80% of his pre-disability "total monthly earnings," thereby eliminating plaintiff's entitlement to disability benefits. Id. As such, in order to avoid the elimination of plaintiff's entitlement to disability benefits upon his return to work, plaintiff and Sun Life allegedly entered into an agreement, separate and independent from the Plan and Group Policy, whereby Sun Life agreed to calculate "disability earnings," without regard to bonus payments, such that Sun Life would pay partial disability benefits based only on plaintiff's reduction in salary. Id. ¶¶ 33-34. In accordance with this agreement, plaintiff returned to work and Sun Life commenced paying partial disability benefits based on plaintiff's reduction in salary. Id. ¶ 35. According to plaintiff, this agreement was memorialized in written communications from Sun Life to plaintiff. Id. ¶ 34.

On January 26, 2009, plaintiff commenced the instant action in the Superior Court of California, County of San Francisco, alleging five causes of action: (1) recovery of employee benefits under 29 U.S.C. § 1132(a)(1)(B); (2) equitable relief under 29 U.S.C. § 1132(a)(3); (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; and (5) fraud. The action was removed to this court on March 3, 2009. On March 10, 2009, Sun Life filed an answer. On March 31, 2009, plaintiff filed a motion to dismiss the counterclaim asserted by Sun Life. Also on March 31, 2009, Sun Life filed a motion to dismiss plaintiff's state law claims and to strike plaintiff's jury demand.

**DISCUSSION**

As a preliminary matter, the court must address plaintiff's contention that Sun Life's motion to dismiss and strike is untimely insofar as it was filed after Sun Life filed an answer to the complaint. While it is undisputed that Sun Life filed its motion to dismiss and strike after filing its answer, the court will nonetheless consider it. When a Rule 12(b)6) motion to dismiss for failure to state a claim upon which relief can be granted is filed after an answer is filed, a court may deny the motion to dismiss as untimely, or the court may consider the Rule 12(b)(6) motion to dismiss as a motion for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c). Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980). Rule 12(h)(2) states that a motion to dismiss for failure to state a claim may be made in a motion for judgment on the pleadings pursuant to Rule 12(c). See also Aldabe, 616 F.2d at 1093 (Rule 12(h)(2) should be read as allowing a motion for judgment on the pleadings, raising the defense of failure to state a claim, even after an answer has been filed. The case for adopting such a position is further strengthened where the answer included the defense of failure to state a claim.).

Because the defense of failure to state a claim is raised in the answer, the court will treat Sun Life's a motion to dismiss for failure to state a claim, as a motion for judgment on the pleadings pursuant to Rule 12(c).

A. Standards

1. Rule 12(c)

When Rule 12(c) is used to raise a defense for failure to state a claim, "the motion for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6)." McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988). That is, dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Id. Motions for judgment on the pleadings under Rule 12(c) are proper when, taking all material allegations in a complaint as true and construing them in the light most favorable to the nonmoving party, the moving party demonstrates that it is entitled to judgment as a matter of law. Geraci v. Homestreet Bank, 347 F.3d 749, 751 (9th Cir. 2003) ("A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law.").

2. Rule 12(f)

Under Rule 12(f) of the Federal Rules of Civil Procedure, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

B. Sun Life's Motion to Dismiss State Law Claims and Strike Jury Demand

Sun Life moves for an order dismissing plaintiff's state law claims on the basis that these claims are preempted by ERISA. Sun Life argues that because ERISA provides the exclusive remedy for claims arising from employer-sponsored group insurance plans, all of plaintiff's state law claims are preempted, and therefore should be dismissed. In addition, Sun Life moves for an order striking plaintiff's jury demand on the basis that there is no right to a jury trial in an ERISA benefits matter. These issues will be addressed in turn.

1. ERISA Preemption

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." Aetna Health, Inc. v. Divila, 542 U.S. 200, 208 (2004). To this end, ERISA includes expansive preemption provisions which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern. Id.; see also Security Life Ins. Co. of America v. Meyling, 146 F.3d 1184, 1188 (9th Cir. 1998) ("ERISA contains one of the broadest preemption clauses ever enacted by Congress."). ERISA preempts all state laws insofar as they relate to an employee benefit plan. 29 U.S.C. § 1144(a); Cleghorn v. Blue Shield, 408 F.3d 1222, 1225 (9th Cir. 2005). This provision has been interpreted broadly to apply to "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy"[1] because any such cause of action would "conflict[ ] with the clear congressional intent to make the ERISA remedy exclusive . . ." Aetna, 542 U.S. at 209 (footnote added).

A common law claim "relates to" an employee benefit plan governed by ERISA "if it has a connection with or reference to such a plan." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995); see also Metropolitan Life Ins. Co. v. Mass., 71 U.S. 724, 739 (1985) (the phrase "relate to" should be given its broad common-sense meaning, such that a state law claim "relates to" a benefit plan in the normal sense of the phrase, if it has a connection with or reference to

---

[1] Section 502(a) of ERISA provides, among other things, that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . ." 29 U.S.C. § 1132(a).

such a plan). A state law claim has a "connection with" a plan regulated by ERISA when the action has an impact on a relationship between traditional ERISA entities, such as between a participant and the plan or an employer. Abraham v. Norcal Waste Sys., Inc., 265 F.3d 811, 820-21 (9th Cir. 2001).

ERISA preempts state law claims if such claims are brought as an attempt to recover benefits owed under a plan governed by ERISA. Crull v. Gem Ins. Co., 58 F.3d 1386, 1390 (9th Cir. 1995) (noting that the Ninth Circuit has held that state law claims of estoppel, waiver, breach of contract, quasi estoppel, and bad faith-all "relate to" an "employee welfare benefit plan" because they represent attempts to recover benefits allegedly owed under the plan); see also Nevill v. Shell Oil Co., 835 F.2d 209, 212 (9th Cir. 1987) (preempting state claims of breach of contract, breach of the covenant of good faith and fair dealing, and fraud insofar as they involved benefits relating to past employment). The civil enforcement provisions of ERISA § 502(a) are the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits. Crull, 58 F.3d at 1390-91 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987)). While ERISA's preemptive scope is broad, it is not all-encompassing. Nevill, 835 F.2d at 212. "Thus, any state claims that 'relate' to ERISA are preempted, so long as the relationship is not 'too tenuous, remote or peripheral.' " Id. (citing Shaw v. Delta Airlines, 463 U.S. 85, 100 n. 21 (1983)).

The Ninth Circuit has articulated the following "unifying characteristics of cases where ERISA preemption was found: (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." Cedars-Sinai Medical Center v. National League of Postmasters of the United States, 497 F.3d 972, 978 (9th Cir. 2007).

Here, there is no dispute that the Plan is an employee benefit plan under ERISA. Plaintiff attempts to avoid ERISA preemption by arguing that his state law claims do not

"relate to" an ERISA plan because the claims are based on a separate contract entered into with Sun Life and he does not seek benefits under the terms of the Plan and Group Policy through these claims. However, the allegations of the complaint clearly suggest otherwise. Plaintiff, for instance, alleges that Sun Life made representations about his eligibility for benefits upon his return to work in a different capacity; specifically, that his entitlement to disability benefits would only be based on plaintiff's reduction in salary without regard to bonus payments. Plaintiff further alleges that after he returned to work Sun Life commenced paying disability benefits based on plaintiff's reduction in salary, but that in June 2008, Sun Life terminated these benefits in violation of the terms of the Plan and Group Policy and Sun Life's representations and assurances, claiming for the first time that it would now interpret "disability earnings" to include bonus payments and continue to interpret pre-disability "total monthly earnings" to exclude bonus payments.

In addition, plaintiff alleges that Sun Life breached its fiduciary duties by, among other things, consciously and unreasonably adopting inconsistent interpretations of the relevant provisions of the Plan and Group Policy regarding "total monthly earnings" and "disability earnings" with the specific intent to minimize and/or eliminate its own financial obligations to the detriment of Plan participant's rights to receive Plan benefits. Plaintiff also alleges that he asserts a breach of fiduciary duty claim against Sun Life as an individual Plan participant and on behalf of all other participants and beneficiaries of the Plan. Through this action, plaintiff seeks, among other things, an order permanently enjoining Sun Life from interpreting the Plan and Group Policy in such a way that excludes consideration of bonus payments when calculating "total monthly earnings" but includes bonus payments when calculating "disability earnings." Plaintiff also seeks an order reinstating his disability benefits.

The court finds that because the state law claims alleged in the complaint arise from plaintiff's efforts to attain disability benefits under the Plan and Group Policy, and directly affect the relationship among traditional ERISA entities, these claims are preempted by ERISA. The state law claims originate from the handling and disposition of plaintiff's claim

for disability benefits and are directly connected with the Plan and Group Policy. Without the Plan and Group Policy there would be no state law causes of action between the parties. Based on the allegations in the complaint, it is evident that plaintiff's state law claims are predicated on Sun Life's interpretation of the terms of the Plan and Group Policy. As such, plaintiff's state law claims are directly "related to" his participation in an ERISA plan, and are therefore preempted by ERISA.

To the extent that plaintiff relies upon Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872 (9th Cir. 2001) to support his position, the court finds this reliance misplaced. This case is factually distinguishable and therefore inapposite. In Waks, the insured was initially covered under a group plan subject to ERISA regulation. However, her claims were based on the insurer's conduct after she had converted her group coverage to an individual policy. Id. at 874. This case is distinguishable from Waks insofar as it does not involve "a new, separate, individual policy based on conversion rights contained in the ERISA plan." Id. at 876. Nor, like Waks, does this case involve a policy that was "converted" by any formal means. See id. at 873-78.

Plaintiff's complaint does not allege that his "new" contract is based on conversion rights contained in the ERISA plan. Nor does the complaint allege that he converted his group coverage to an individual policy by formal means. Instead, the complaint simply alleges that plaintiff and Sun Life entered into a separate contract based on representations about how Sun Life would calculate disability earnings upon his return to work in a different capacity, and that this agreement was allegedly memorialized in written communications from Sun Life. Plaintiff, however, does not plead the substance of these written communications, nor does he attached these communications to the complaint.

The court finds such pleading insufficient to establish that plaintiff's insurance policy was converted from a group policy covered by ERISA to an individual one, such that his claims pertaining to the individual policy are not preempted by ERISA. Plaintiff failed to cite any authority finding that state law claims were not preempted under analogous circumstances.

Accordingly, because plaintiff's state law claims are preempted by ERISA, Sun Life's motion to dismiss plaintiff's third through fifth causes of action is GRANTED.

2. Jury Demand

Sun Life contends that plaintiff's request for a jury trial should be stricken because there is no right to a jury trial for claims brought pursuant to ERISA.

The Ninth Circuit has held that "the remedies available to a participant or beneficiary under ERISA are equitable in nature and the Seventh Amendment does not require that a jury trial be afforded for claims made by participants or beneficiaries." Thomas v. Oregon Fruit Products Co., 228 F.3d 991, 997 (9th Cir. 2000). To the extent that plaintiff contends that Thomas was overruled by the Supreme Court in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the court disagrees. In Great-West, the Supreme Court did not address any issue pertaining to the right to a jury trial under ERISA.

Accordingly, given that there is no right to a jury trial in cases brought under ERISA, Sun Life's motion to strike plaintiff's jury demand is GRANTED.

C. Plaintiff's Motion to Dismiss Counterclaim

Sun Life's counterclaim seeks to recover an overpayment of disability benefits to plaintiff in the amount of $47,683.12 pursuant to the terms of the Plan's reimbursement provision. Plaintiff argues that Sun Life's counterclaim should be dismissed because fiduciaries such as Sun Life have no claim for legal relief against plan participants under ERISA. Plaintiff maintains that the allegations of the counterclaim make clear that Sun Life is seeking monetary relief from plaintiff insofar as there is no allegation that Sun Life seeks an equitable lien or a constructive trust over any specific funds. Sun Life counters by arguing that its counterclaim pleads sufficient facts to support a claim for equitable reimbursement under ERISA because the allegations identify a "specific fund" from which Sun Life can seek reimbursement; namely, the amount of disability benefits it overpaid to plaintiff.

Section 502(a)(3)(B) of ERISA permits a fiduciary to bring a civil action "to obtain . . . equitable relief . . . to enforce . . . the terms of the plan . . ." Great-West, 534 U.S. at 209

(citing 29 U.S.C. § 1132(a)(3)). Section 502(a)(3), by its terms, only allows for equitable relief. Great-West, 534 U.S. at 221.

The term "equitable relief" in § 502(a)(3) refers to those categories of relief that were typically available in equity. Great-West, 534 U.S. at 210. A plaintiff can seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. Id. at 213. However, where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust or an equitable lien upon other property of the defendant. Id. at 213-14. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession. Id. at 214.

Great-West involved a claim for specific performance of a reimbursement provision contained in an ERISA plan. Great-West, 534 U.S. at 206. The Court held that section 502(a) does not authorize a benefit plan to bring an action for specific performance of a reimbursement provision of a plan, and to compel plan beneficiary who had recovered from alleged third-party tortfeasor, to make restitution to the plan for benefits that it had paid where the relief sought was legal-the imposition of personal liability upon beneficiary on a contractual obligation to pay money. Id. at 221. There, the funds to which the benefit plan claimed an entitlement to under the plan's reimbursement provision-the proceeds from the settlement of the respondents tort action-were not in the respondents' possession or under their control, but rather had been placed in a "Special Needs Trust" under California law. Id. at 214. The Court determined that the kind of relief petitioners sought was not equitable – the imposition of a constructive trust or equitable lien on particular property – but legal -- the imposition of personal liability for the benefits that petitioners conferred upon respondents because petitioners' claim was not that the respondents held particular funds that, in good conscience, belonged to petitioners, but that petitioners were contractually

entitled to some funds for benefits that they conferred. Id. The Court concluded that "[b]ecause petitioners are seeking legal relief-the imposition of personal liability on respondents for a contractual obligation to pay money-§ 502(a)(3) does not authorize this action. Id. at 221.

The court finds that Sun Life has failed to sufficiently allege that the particular funds to which it claims an entitlement to under the Plan's reimbursement provision are funds belonging in good conscience to Sun Life and can clearly be traced to particular funds in plaintiff's possession or control, such that the court could impose a constructive trust or equitable lien on such funds. Sun Life's counterclaim does not indicate whether the kind of relief it seeks is equitable – the imposition of a constructive trust or equitable lien on particular funds within the possession or control of plaintiff – or legal – the imposition of personal liability on plaintiff for a contractual obligation to pay $47,683.12. In the absence of allegations stating that Sun Life seeks equitable relief and facts supporting that claim, Sun Life's counterclaim cannot proceed. Under Great-West, the court may not order restitution from plaintiff in the form of an order requiring him to make a monetary payment to Sun Life. Doing so would constitute a legal remedy that is not permitted under ERISA.

Accordingly, because Sun Life has not pled sufficient facts establishing that the remedy it seeks is equitable in nature, plaintiff's motion to dismiss Sun Life's counterclaim is GRANTED.

**CONCLUSION**

For the reasons stated above, the court hereby GRANTS Sun Life's motion to dismiss state law claims and strike jury demand. Because any amendment would be futile, the dismissal is without leave to amend. The court further GRANTS plaintiff's motion to dismiss Sun Life's counterclaim. Because the counterclaim could conceivably be cured by amendment, the dismissal is with leave to amend within 30 days.

**IT IS SO ORDERED.**

Dated: May 1, 2009

PHYLLIS J. HAMILTON
United States District Judge